UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**       'O'

| Case No. | 2:18-CR-00473-CAS-1 | Date | May 23, 2022 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Laura Elias | Rachel Agress / Jena MacCabe |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant: | Present | Cust. | Bond | Attorneys for Defendant: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| BYRON SUMLIN | X | | X | GREGORY NICOLAYSEN | X | X | |

**Proceedings:**    DEFENDANT'S MOTION *IN LIMINE* FOR *DAUBERT* HEARING AND ORDER EXCLUDING TESITMONY BY GOVERNMENT EXPERT, ALEXANDER LIWIENSKI (Dkt. 71, filed April 15, 2022)

GOVERNMENT'S MOTION *IN LIMINE* NO. 1 TO ADMIT TEXT MESSAGES; DECLARATION OF JENA A. MACCABE; EXHIBITS A-C (Dkt. 75, filed April 25, 2022)

GOVERNMENT'S MOTION *IN LIMINE* NO. 2 TO ADMIT DIRECT EVIDNECE, INEXTRICABLY INTERTWINED EVIDENCE, AND EVIDENCE OF DEFENDANT'S "OTHER ACTS" (Dkt. 76, filed on April 25, 2022)

## I. INTRODUCTION

On July 26, 2018, the United States filed a single-count indictment against defendant Byron Sumlin, charging him with a violation of 18 U.S.C. 922(a)(1)(A), which prohibits engaging in the business of dealing in firearms without a license. Dkt. 1. On February 1, 2022, the government filed a First Superseding Indictment, alleging that on seven occasions over a period from approximately October 2013, to March 2017, Sumlin sold a handgun to a confidential informant. Dkt. 64 ("FSI").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**       'O'

On April 15, 2022, Sumlin filed a motion *in limine* to preclude the testimony of the government's expert witness, Alexander Liwienski. Dkt. 71 ("Def. MIL"). On May 9, 2022, the government filed an opposition. Dkt. 88 ("Gov't Opp. Def. MIL").

On April 25, 2022, the government filed a motion *in limine* to admit text messages, the declaration of Jena A. Maccabe, Exhibits A-C, and to request the unsealing of a state search warrant. Dkt.75 ("Gov't MIL No. 1"). On the same day, the government filed a second motion *in limine* to admit direct evidence, inextricably intertwined evidence, and evidence of defendant's other acts under Fed. R. Evid. 404(b). Dkt. 76 ("Gov't MIL No. 2"). On April 29, 2022, defendant filed an opposition to the government's motion to admit text messages. ("Def. Opp. MIL No. 1"). On May 9, 2022, defendant filed an opposition to the government's second motion *in limine*. Dkt. 91 ("Def. Opp. Gov't MIL No. 2).

On May 23, 2022, the Court held a hearing on the parties' motions *in limine*. Id.

## II. BACKGROUND

### A. 18 U.S.C. § 921(a)(1)(A)

Under 18 U.S.C. 922(a)(1)(A), "it shall be unlawful for any person except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." Under the statute the term "dealer" is defined as "(A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker." The term "engaged in the business" when applied to a dealer in firearms, is defined as "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." 18 U.S.C. § 921(a)(21)(C).

### B. The First Superseding Indictment

The First Superseding Indictment ("FSI") alleges that "beginning in or around October 2013, and continuing to at least on or about March 8, 2017," defendant Bryon

Sumlin also known as "Bizzy" or "Bizzee" and "others known and unknown to the Grand Jury, each aiding and abetting the others," unlawfully and willfully "engaged in the business of dealing in firearms." FSI at 1.

The FSI lists seven business dealings between Sumlin and a confidential informant involving firearms dated (1) August 28, 2014, (2) September 11, 2014, (3) January 16, 2015, (4) May 5, 2015, (6) May 15, 2015, (7) January 7, 2016, and (8) March 8, 2017. Id. at 2. Specifically, the FSI states that it is "not limited to" the transactions on the alleged dates. Id.

### C. Sale of a Firearm linked to the October 19, 2013 Shooting

The government's first motion *in limine* raises facts related to an October 19, 2013 shooting in South Los Angeles by an unnamed perpetrator with a 9-millimeter handgun. Gov't MIL No. 1 at 2. The government contends that the evidence presented shows that defendant supplied the gun used during the shooting.

The government states on an unknown date prior to October 19, 2013, an Avenue Piru Gang member known as "Casper" Ryan Roth, who was 17 years old at the time, showed the confidential informant a 9-millimeter Sig Sauer firearm. Id. Shortly thereafter, defendant allegedly told the confidential informant that he sold the gun to Roth. Id. Then, on October 19, 2013, the shooting and robbery occurred. In connection with the investigation of the shooting, on November 6, 2013, the Honorable Drew E. Edwards of the Superior Court of the State of California, County of Los Angeles, issued a search warrant, No. 66956, for the cellphone of one of the suspects of the shooting, Roth. Id. The search warrant yielded text messages, exchanged on October 23, 2013, between Roth and an "unidentified broker," who was attempting to assist Roth in finding a firearm to purchase:

> ROTH: U know dat nigga who Tryna sell that thang
>
> ROTH: Wut he got
>
> ROTH: A ask lil 7flame do he know sumbody
>
> Unidentified Broker: The Mexican got a 45 with a snub nose but I'll p for you
>
> Unidentified Broker: He said ya what u got

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**         'O'

ROTH: Okill how much he want an how many rounds

ROTH: I got 300-350

ROTH: ?

Unidentified Broker: I'll see right now the 45 is a revolver snub nose all black

ROTH: Ok where he at

ROTH: Aye bro?

Unidentified Broker: 7flame said he know some1 letting sum10 go but you need AT LEAST 5 (approximately 12:27 p.m.)

ROTH: Wut is it (approximately 12:28 p.m.)

Unidentified Broker: A p95 but its not his its bissy (approximately 12:33 p.m.)

ROTH: How many shots (approximately 12:34 p.m.)

Unidentified Broker: He said it comes with two 15 round clips (approximately 12:36 p.m.)

ROTH: Nigga Bizzy sold that shit (approximately 12:39 p.m.)

Unidentified Broker: A that's what he just told me the Mexican boy will be here tomorrow I know for show fa showhe letting it go for 3 (approximately 12:50 p.m.).

    The government notes that the name "Bizzy" (Sumlin's moniker) was saved in Roth's phone, with a phone number ending in "2475" subscribed to Sumlin at his known address. Gov't MIL No. 1 at 9. Phone tolls shows that there were approximately 94 calls between Roth and defendant between August 1, 2013, and October 22, 2013. Id. Further on October 23, 2013, during the text exchange between Roth and the unidentified broker, defendant and Roth exchanged 13 text messages. Id. Roth and his co-conspirator were

charged with the October 19, 2013 robbery and shooting. Roth was later acquitted of the murder charges. Id.

Further, in connection with the October 19, 2013 shooting, the Honorable Dean D. Cohen of the Superior Court of the State of California, County of Los Angeles, issued a search warrant for Sumlin's house. Id. The government seeks to admit testimony of Los Angeles Police Department Detective Everard Amaral who assisted in the execution of the warrant. Id. Detective Amaral is expected to testify that while law enforcement was commanding the residents to exit defendant's house, Detective Amaral witnessed defendant walk into his bedroom toward his closet. Further, Detective Amaral is expected to testify that he found the following items in defendant's bedroom closet: over 240 rounds of ammunition made by various manufacturers and of the following calibers: .223, 9, .40, .45, .357, and .22, as well as three .45 caliber magazines, three .22 caliber magazines, two 9 mm magazines, and a semi-automatic 9 mm Glock 19 registered to defendant. Gov't. MIL No. 2 at 4-5. Defendant notes that the single gun found was properly registered in his name. Def. Opp. MIL No. 2.

### D. Additional Sales Alleged in the Government's Motions *in Limine*

The government's second motion *in limine* lists facts related to sales defendant brokered that were not specifically listed in the First Superseding Indictment.

The government cites to certified records in 2012, which show defendant previously purchased a firearm from a private party and followed the California-mandated Dealer's Record of Sale ("DROS") process. Def. MIL No. 2 at 6-7.

Further, the government alleges that at some point prior to October 2013, defendant sold a ".38 Special," a revolver, to Ralph Adrian Williams, known by his gang moniker "Tiny Ace." Gov't MIL No. 2 at 3. Moreover, in approximately September 2013, the confidential informant allegedly purchased a Glock 17 with two 10-round magazines from defendant. Id.

The government also plans to introduce recorded statements from September 2014, in which defendant told the confidential informant that he moved a large stash of firearms out of his house shortly before the execution of the warrant associated with the October 19, 2013 shooting. Id.

Moreover, the government expects to introduce evidence related to a May 23, 2017 sale of two stolen shotguns, allegedly arranged by defendant. Id. Sometime before May 23, 2017, defendant allegedly arranged the sale of two stolen shotguns from Justin Jackson, a gang member known by his moniker "Baby Taco," to the confidential informant. In connection with this sale, the government plans to introduce cellphone tolls between defendant and Jackson on May 19 and 20, 2017. Gov't MIL No. 2 at 5.

Finally, the government plans to introduce testimony related to a firearm sale by defendant in November 2017. In approximately October 2017, the confidential informant was at defendant's house when defendant received a phone call, whom the informant recognized as a member of the Eight Trey gang. Gov't MIL No. 2 at 6. The Eight Trey gang member allegedly asked if defendant had guns, to which defendant replied that the caller should wait a couple of weeks. Id. Later in November 2017, the confidential informant allegedly saw an unidentified male from Eight Trey with dreadlocks buy a handgun from defendant in defendant's backyard. Id.

### III. LEGAL STANDARDS

#### A. Motions *in Limine*

"A motion *in limine* is a procedural mechanism to limit in advance testimony or evidence in a particular area." United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009). "[M]otions *in limine* must identify the evidence at issue and state with specificity why such evidence is inadmissible." Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc., No. 08-cv-08525-PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). The "failure to specify the evidence" that a motion *in limine* "seek[s] to exclude constitutes a sufficient basis upon which to deny th[e] motion." Bullard v. Wastequip Mfg. Co. LLC, No. 14-cv-01309-MMM, 2015 WL 13757143, at *7 (C.D. Cal. May 4, 2015).

"Trial courts have broad discretion when ruling on motions *in limine*." Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc., No. 2:16-cv-0084-FMO-AJW, 2017 WL 2929377, at *1 (C.D. Cal. May 14, 2017). Such rulings are "not binding on the trial judge, and the judge may always change his mind during the course of a trial." Ohler v. United States, 529 U.S. 753, 758 (2000). "Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine

whether the evidence in question should be excluded." Matrix Int'l Textile, 2017 WL 2929377, at *1 (citation omitted).

### B.   Federal Rule of Evidence 702

Federal Rule of Evidence 702 allows for expert testimony, subject to certain requirements and conditions:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Rule 702 inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592–93 (1993). The district court must also "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. . . . Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." United States v. Finley, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing Daubert, 509 U.S. at 591–93). Daubert's "gatekeeping obligation" "applies not only to testimony based on 'scientific' knowledge but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Company v. Carmichael, 526 U.S. 137, 141 (1999). "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

In acting as the gatekeeper, the trial court has broad discretion in deciding whether to admit or exclude expert testimony. See e.g., General Elec. Co. Joiner, 522 U.S. 136, 142 (1997); United States v. Espinosa, 827 F.2d 604, 611 (9th Cir.1987) ("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**        'O'

## IV. DISCUSSION

### A. Defendant's Motion *in Limine* for *Daubert* Hearing

Defendant filed a motion *in limine* requesting a *Daubert* hearing on the admissibility of Alexander Liwienski's, the government's expert, testimony, and challenging the designation of Liwienski as an expert witness. Def. MIL at 2.

The government intends to introduce at trial expert testimony of Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Alexander Liwienski about: (1) the identification of the firearms, ammunition, and magazines that defendant sold to the confidential informant or spoke about selling to other individuals, as well as the ammunition recovered during execution of a warrant on defendant's house; (2) the federal firearm licensing requirement, federal and state registration requirements, serial numbers, and tracing; (3) common attributes of unlawful firearm sales, including black-market firearm sales, reasons that black-market dealers purchase firearms outside the state of California and illegally import and sell them in California, and pricing on the black market; and (4) coded/slang language typically used in unlawful firearm sales, which defendant used in this case. Id.

Defendant objects to the expert testimony on three grounds. First, defendant contends that the government's expert notice fails to satisfy Fed. R. Crim. P. 16(a)(1)(G). Def. MIL at 2. Second, defendant argues that the proffered expert testimony of Liwienski is inadmissible under Fed. R. Evid. 702 because it will not assist the trier of fact in understanding the evidence, and the proffered testimony is irrelevant to the issues raised by the indictment. Id. Third, defendant argues that Liwienski lacks proper credentials to qualify as an expert on the subject areas at issue, even if the Court were to allow expert testimony on these subjects. Id. at 16-17.

As an initial matter, defendants argue that the government's expert disclosure fails to comply with Fed. R. Crim. P. 16(a)(1)(G). Id. As relevant here, Rule 16(a)(1)(G) states that if requested by a defendant, the "government must give to the defendant a written summary of any testimony that the government intends to use . . . during its case-in-chief at trial," and the summary of an expert witness "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Defendant contends that "the government's expert disclosure for Liwienski does not make any reference to any report or analysis issued by him, and includes only "generalized narrative of topics." Def. MIL at 7.

Next, defendant argues that the subjects presented in the government's expert disclosure fail to satisfy the requirements of Fed. R. Evid. 702 for expert testimony, and that Liwienski's credentials do not qualify him as an expert. Rule 702 states that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if**:** (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Thus, defendant requests a *Daubert* hearing to properly assess the admissibility of the expert testimony. Def. MIL at 9. Defendant raises numerous objections to the government's proffered expert testimony under Fed. R. Evid. 702 including: (1) the expert definition and description of the nature and characteristics of the firearms, ammunition, and magazines seized has no relationship to the statutory elements under 18 U.S.C. 922(a)(1)(A) and any discussion could be handled by stipulation because there is no dispute that defendant sold handguns to the informant, id. at 11; (2) the expert differentiation between the make, model, and caliber of firearms is irrelevant and will not assist the trier of fact, id.; (3) expert testimony regarding federal licensing requirements, federal and state registration requirements, serial numbers and tracing require the expert to testify about legal standards, id. at 12; (4) expert testimony characterizing certain types of sales as unlawful is irrelevant because the statute does not hinge on "black market sales," id. at 13-14; and (5) expert testimony explaining "coded" language used in unlawful firearm sales is not relevant, id. at 15.

Further, defendant argues that Agent Liwienski lacks the proper credentials to qualify as an expert on the topics listed in the expert disclosure. Def. MIL at 15. Defendant notes that "there is a conspicuous disconnect between the subject areas presented in the expert disclosure and [] Liwienski's background statement." Def. MIL at 16. Defendant argues that the expert disclosure shows that Liwienski's proffered testimony is experience-based, and not based on any research or methodology. Def. MIL at 9. Under such circumstances, defendant contends that the Court must use its gatekeeping role to ensure the reliability of the expert's testimony. See United States v. Valencia-Lopez, 971 F.3d 891, 898 (9th Cir. 2020).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**               'O'

The government responds that its expert notice does, in fact, satisfy Fed. R. Crim. P. 16(a)(1)(G). On April 8, 2022, the government disclosed a summary of Agent Liwienski's anticipated expert testimony, including his opinions and the reasons for such opinions. Dkt. 71, Ex. A. The government notes that Rule 16 requires only "a written summary," and that by providing a six-page, granular letter, the government has complied with this requirement. Gov. Opp. Def. MIL at 4; Fed. R. Crim. P. 16(a)(1)(G). Further, the government emphasizes that the expert notice also contains a description of Agent Liwienski's qualifications, which include 14 years of experience as a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. Ex. A.

Moreover, the government responds that Agent Liwienski's anticipated testimony satisfies Fed. R. Evid. 702. The government argues that this testimony is essential to disproving defendant's theory of the case. Because defendant's theory is that defendant engaged only in legitimate "side-dealing" of firearms within the statutory carve-out and not an illegal business for profit, Agent Liwienski's testimony about the wide variety of firearms, ammunition, and magazines sold "will illuminate defendant's willfulness in engaging in firearm deals, including unlawful ones." Gov. Opp. Def. MIL at 7.

Next, the government contends that the expert testimony on federal licensing requirements, serial numbers, and tracing is admissible because this testimony will aid the factfinder in determining whether defendant engaged in the business of dealing firearms without a license. Gov't Opp. Def. MIL at 8. The government emphasizes that Agent Liwienski will not opine on an ultimate legal conclusion or instruct the factfinder as to the applicable law, but rather will explain "the nature of and requirements for a federal firearms license" to "provide background on a fact in issue in this case." Id. at 8. Further, the government argues that the testimony on the common attributes of unlawful firearm sales and coded language is admissible because this testimony will show the "general practice of criminals to establish the defendants' modus operandi." United States v. Freeman, 498 F.3d 893, 906 (9th Cir. 2007). For example, the government argues that the prices defendant charged will show that defendant was not merely selling to "a friend," as defendant purports, but rather making black-market deals. Gov't. Opp. Def. MIL at 10-11.

Finally, the government contends that Agent Liwienski is qualified to testify as an expert and no Daubert hearing is necessary. Id. at 11. In addition to the summary of Agent Liwienski's qualifications in the government's expert letter, the government also provided Agent Liwienski's qualification statement. Id. The qualification statement notes that Agent Liwienski has previously testified as an expert on the interstate nexus of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL                    'O'**

firearms and ammunition in the Central District of California.  Id.  He has also worked as an ATF Special Agent since 2008, and had previously served as a police officer in Detroit, Michigan and as a non-commissioned officer in the United States Army.  His numerous trainings include the Detroit Police Academy, Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program, ATF Special Agent Basic Training, ATF Firearms Interstate Nexus Course, FLETC Firearm Instructor Training Program, ATF Advanced Firearms Interstate Nexus Course, and Glock Armorer's Course.  Id.

    Daubert's gatekeeping function is intended to ensure the relevance and reliability of expert testimony "to protect juries from being swayed by dubious" testimony.  United States v. Flores, 901 F.3d 1150, 1165 (9th Cir. 2018).  When the district court sits as the finder of fact, there is less need for the gatekeeping of evidence because "there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial," such that "the district court is able to make its reliability determination during, rather than in advance of, trial."  Id.; see also F.T.C. v. BurnLounge, Inc., 753 F.3d 878, 888 (9th Cir. 2014).  "Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702."  Flores, F.3d at 1165.

    As such, the Court finds that, at the present time, the testimony of expert witness Agent Liwienski is admissible, and a *Daubert* hearing is not necessary.  See id. (citing David E. Watson, P.C. v. United States, 668 F.3d 1008, 1015 (8th Cir. 2012) ("When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.").

    Further, the government has provided a lengthy summary of Agent Liwienski's qualifications to satisfy Fed. R. Evid. 702—including that Agent Liwienski has previously testified as an expert on firearms and has over 14 years of experience as a special agent—and defendants have not raised any colorable arguments challenging such credentials.  See United States v. Hankey, 203 F.3d 1160, 1169-70 (9th Cir. 2000) (finding that the testimony of a law enforcement expert based on "street intelligence" from "years working with gangs" and "communicat[ing] and work[ing] undercover with thousands of gang members" was reliable and admissible as expert testimony under *Daubert*).  At trial, the government will elicit Agent Liwienski's background, education, training, and experience qualifying him to testify as an expert, at which time the defense will be free to raise any objections and cross-examine him regarding the same.

As to the substance of Agent Liwienski's testimony, the government has put forth preliminary support that the expert testimony on the attributes of firearms and unlawful firearm sales is relevant to rebut defendant's contention that he engaged in only legitimate "side-dealing" of firearms. While defendant's objections to the testimony are not meritless, they appear to go to the weight, rather than admissibility of the testimony. See United States v. Alatorre, 222 F.3d 1098 (9th Cir. 2000). Therefore, the Court will permit the evidence to be presented during trial and will receive such evidence conditionally subject to any future motion to strike.

Accordingly, the Court **RESERVES JUDGMENT** on defendant's motion *in limine* to exclude the expert testimony of Agent Liwienski and **DENIES** defendant's request for a *Daubert* hearing.

### B.    Government's Motion *in Limine* to Admit Evidence

The government filed a motion *in limine* to admit text messages between third parties from October 2013 that relate to an alleged firearm sale by defendant, and for an order directing the Superior Court of California, Los Angeles County to unseal state search warrant No. 66956 for disclosure to the parties in this case. Gov't MIL No. 1.

The government seeks to introduce a text message chain from October 2013, described in Section II.C, between Ryan Roth and an unidentified broker. Id. at 2. In connection with the investigation of the October 19, 2013 shooting, on November 6, 2013, the Superior Court of the State of California, County of Los Angeles, issued a search warrant, No. 66956, for the cellphone of one of the suspects of the shooting, Ryan Roth. The government notes that it does not seek to introduce the fact of the murder at trial, but rather seeks to admit the text messages obtained through the state warrant between the unidentified broker and Roth. In the text messages, the unidentified broker states that he heard that defendant has a firearm for sale for at least $500 with two high-capacity magazines. Roth then informs the unidentified broker that defendant had already sold the firearm. Additionally, the government seeks to introduce evidence that Roth was in contact with defendant at the time he was exchanging the text messages with the unidentified broker. Id. at 1.

The government argues that the text messages are admissible to rebut any argument that defendant was a "hobbyist" selling firearms only to the confidential source. Gov't MIL No. 1 at 2. The government emphasizes the probative nature of the text messages, arguing that they demonstrate that defendant held himself out on the black

market as having firearms available for sale. United States v. Zheng, 2002 WL 32334387, at *2 (D. N. Mar. I. July 18, 2002), aff'd sub nom. United States v. Shan, 80 F. App'x 31 (9th Cir. 2003) (18 U.S.C. §922(a)(1)(A) conviction upheld where defendant held himself out as a reliable source of firearms).

      The government argues the text messages are admissible as "party admissions of defendant" under Fed. R. Evid. 801(d)(2)(C). Gov't MIL No. 1 at 5. Fed. R. Evid. 801(d)(2)(C) states that a statement is not hearsay if it is an opposing party statement "made by a person whom the party authorized to make a statement on the subject." During the text message conversation, the unidentified broker states that he heard that "Bissy" (defendant's known moniker) was selling a firearm; at the same time Roth responded that "Bizzy sold that shit," while Roth is sending and receiving text messages from defendant. Gov't MIL No. 1 at 5. The government argues that the statements by the unidentified broker about the firearm for sale are not hearsay because they were implicitly authorized by defendant as he had advertised to the market that he had a firearm for sale, and wanted to get the word out. Id. at 6.

      Further, the statements by the unidentified broker advertising the pricing of the firearms are, the government argues, admissible as co-conspirator statements made by an unindicted co-conspirator during and in furtherance of defendant's conspiracy to illegally sell firearms under Fed. R. Evid. 801(d)(2)(E). Fed. R. Evid. 801(d)(2)(E) states that a statement is not hearsay if it is an opposing party statement "made by the party's coconspirator during and in furtherance of the conspiracy."

      Alternatively, the government argues that the text messages are admissible under the residual exception to the hearsay rule under Fed. R. Evid. 807, because the statements are trustworthy considering the circumstances under which they were made and because they are supported by corroborating evidence. Gov't MIL No. 1 at 2. Fed. R. Evid. 807 permits evidence to be admitted even if the statement is not admissible under a hearsay exception in Rule 803 or 804 if "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement," and if "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."

      The government contends that these text messages are the most probative evidence that the government has to offer regarding the specific events in October 2013. According to the government, the text messages are highly probative of the ultimate

questions of fact because they show that defendant held himself out in the black market as someone who had firearms available for sale, including to prohibited persons, such as a minor.  Id.

Defendant responds that the evidence of the text messages should be excluded as inadmissible hearsay.  Def. Opp. MIL No. 1 at 1.  First, regarding co-conspirator statements, defendant notes that "the government has not alleged, nor does pretrial discovery suggest, that Sumlin was making the sales to the informant as part of a criminal agreement with others seeking to jointly engage in the business of dealing in firearms."  Id. at 2.

Further, defendant argues that the text messages are not admissible under the residual exception in Fed. R. Evid. 807.  Def. Opp. MIL No. 1 at 5.  Defendant argues that the text messages lack foundational reliability.  Id.  Defendant points out that none of the text messages were sent or received by defendant, and the messages were exchanged by a minor and multiple unidentified individuals.  As such, defendant argues that the evidence does not possess sufficient circumstantial guarantees of trustworthiness.  Id.  Further, defendant argues that an additional level of hearsay exists because the text messages were not written with personal knowledge.  Id. at 8.  Finally, defendant argues that the government has failed to show that they cannot procure the testimony of Roth, which defendant argues is more probative on the point for which it is offered, as required by Fed. R. Evid. 807.[1]  Id.

As an initial matter, the Court notes that the government will likely have difficulty admitting the text message conversations under an exception to the rule against hearsay.  Under Rule 801(d)(2)(E), the statement of a co-conspirator is admissible against the defendant if the government shows "by a preponderance of the evidence that a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy."  United States v. Bowman, 215 F.3d 951, 960-61 (9th Cir. 2000).  The government has not yet shown by a preponderance of the evidence that defendant participated in a conspiracy to sell illegal firearms, nor that the statements of the third parties were made in a furtherance of such a conspiracy.  Moreover, as to the government's claim that the text messages are admissible under the residual exception,

---

[1] During the May 23, 2022 hearing, the government argued that if called to testify, Roth will likely invoke his Fifth Amendment right against self-incrimination and the government is not prepared to offer Roth immunity.

there still remains significant questions as to the reliability and trustworthiness of such evidence.  Further, the Ninth Circuit has repeatedly observed the established rule that Fed. R. Evid. 807 "is to be used rarely and in exceptional circumstances." Fong v. Am. Airlines, Inc., 626 F.2d 759, 763 (9th Cir. 1980); see also United States v. Bonds, 608 F.3d 495, 500-02 (9th Cir. 2010).  Accordingly, the Court notes that the government faces significant obstacles in ultimately having the text messages admitted into evidence.

Nonetheless, for the reasons previously discussed, the Court will conditionally admit the text messages into evidence, subject to any future motion to strike.  Because this is a bench trial, and the Court sits as the trier of fact, the Court finds that defendant's objections to the admission of the text message conversations are more appropriately addressed at trial as there is 'less danger that a trial court will be unduly" prejudiced by the evidence.  F.T.C. v. BurnLounge, Inc., 753 F.3d 878, 888 (9th Cir. 2014).

Accordingly, the Court **RESERVES JUDGMENT** on the government's motion *in limine* to admit the text message conversation from October 23, 2013.  Further, the Court **GRANTS** the government's request for the Court to direct the state court to unseal the warrant for disclosure to the parties to this case.

### C.   Government's Motion *in Limine* No. 2 to Include Additional Evidence

The government filed a second motion *in limine* to (1) admit direct evidence; (2) admit inextricably intertwined evidence; and (3) admit evidence of defendant's other acts under Fed. R. Evid. 404(b).  In addition to the specifically-charged transactions in the First Superseding Indictment, the government's motion lays out additional evidence the government expects to introduce at trial: (1) evidence of defendant's engagement in firearm dealings surrounding the specified period earlier in 2013 and later in 2017; (2) evidence of possession of an "extensive stash" of firearms and ammunition by defendant in October 2013; and (3) evidence regarding defendant's prior compliance with California law during a 2012 private party sale, but failure to comply with California law in connection with any firearm sales during the charged period, as well as defendant's sales of California-prohibited high-capacity magazines.  Gov't MIL No. 2 at 1.

First, the government argues that the additional evidence is admissible because the First Superseding Indictment is approximate and open-ended.  Id.  Accordingly, the government contends that the evidence of defendant's engagement in firearm dealing prior to 2013 and after 2017 is covered by the plain language of the FSI.  Id. at 8.  The government emphasizes the FSI's broad language which sets out a timeframe

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**                  '**O**'

"[b]eginning in or around October 2013, and continuing to at least on or about March 8, 2017." FSI at 1. In the event the defense attempts to limit the government's proof at trial to the specified timeframe, the government argues that the Court should find that evidence from the surrounding period—earlier in 2013 and later in 2017—is covered by the language of the charging instrument, because the FSI is approximate and open-ended. Gov't MIL No. 2 at 8.

In the alternative, the government argues that evidence of defendant's course of dealing beyond the timeframe should not be considered prohibited "other act" evidence under Fed. R. Evid. 404(b). Rather, the government contends the evidence is admissible because the dealings are "inextricably intertwined" with the conduct charged "necessary [] to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012) (internal citations omitted).

Additionally, the government argues this evidence is admissible under Fed. R. Evid. 404(b), as defendant's conduct surrounding the period specified in the FSI speaks to defendant's plan and motive to hold himself out as a firearms dealer in the community, defendant's intent to profit from willing black-market purchasers and sellers, and defendant's knowledge that his conduct was unlawful. Gov't MIL No. 2 at 2. Fed. R. Evid. 404(b) states that "evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but the "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." For example, the government argues that evidence of defendant's statements to the confidential informant regarding his possession of firearms and ammunition in October 2013, speaks to defendant's readiness to supply firearms; and defendant's statements about successfully avoiding law enforcement detection are probative of defendant's knowledge of his unlawful conduct. Gov't MIL No. 2 at 2. Further, additional sales involving third parties demonstrate that defendant devoted time, attention, and labor to dealing firearms and held himself out as a dealer to numerous others, not just to the confidential informant. Id.

Lastly, the government argues that evidence related to defendant's violations of state laws regarding firearm transfers and high-capacity magazines during the charged period is direct evidence of defendant's black-market dealings and knowledge of wrongdoing. Gov't MIL No. 2 at 17. This evidence "provides important context for the fact-finder to consider in determining whether defendant engaged in the illegal dealing of

firearms during the charged period." Id. at 3. For instance, the government argues that defendant's failure to follow the California-mandated Dealer's Record of Sale process when he sold firearms is probative of the fact that the transactions being brokered by the defendant were black-market firearm sales, which defendant facilitated as his business, and were not lawful, occasional sales for a hobby. Id.

Defendant responds that the government is attempting to "expand the reach of this prosecution by presenting more and more testimony by its informant" that is beyond the scope of the First Superseding Indictment. Def. Opp. MIL No. 2 at 2. Defendant claims that the government is stretching the chronology of the case to show that defendant did not only sell to the informant, but also was a "black-market firearm dealer." Id. This evidence, defendant contends, is inadmissible because it lacks reliability, is not supported by corroborating evidence, and includes hearsay statements. Id. Defendant argues that the Court should limit the government's evidence to the time frame charged in the first superseding indictment. Def. Opp. MIL No. 2 at 7. See also Ninth Circuit Model Criminal Jury Instructions No. 6.18 ("On Or About – Defined") [2022 Edition].

Defendant argues that any evidence beyond the seven sales listed in the FSI is inadmissible. Therefore, defendant requests that the Court exclude the following evidence listed in the government's motion *in limine*: (1) evidence that predates "on or about October 2013" or comes after "on or about March 8, 2017," as the government's case should be presented within the time parameters alleged in the First Superseding Indictment; (2) evidence regarding the search of Sumlin's residence in October 2013, including any testimony or physical evidence regarding a "stash" of firearms and ammunition; (3) evidence of a May 2017 sale of a firearm by Jackson to the informant; (4) evidence of a November 2017 sale of a firearm allegedly made by defendant; (5) evidence of California DROS requirements, as well as any DROS procedures involving Sumlin dating back to 2012; and (6) expert opinions or characterizations regarding magazines that defendant directly sold to the informant on the seven occasions from August 2014 to January 2016. Def. Opp. MIL No. 2 at 15.

Further, defendant argues that Detective Amaral's testimony that during his search of defendant's home he found an "extensive stash of firearm and ammunition" is misleading and highly prejudicial, particularly because the items seized include a single pistol and various types of ammunition which were returned to defendant because "he was not a felon." Def. Opp. MIL No. 2 at 5; see also Fed. R. Evid. 403.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**     'O'

For the reasons stated above, the Court finds that the government is permitted to conditionally admit the direct evidence; inextricably intertwined evidence; and the evidence of defendant's other acts listed in its motion *in limine*, subject to any future motion to strike. Defendant even acknowledges in his opposition that the government's evidence raises issues of "credibility [] for which a trier of fact will have to decide." Def. Opp. MIL No. 2. Accordingly, defendant's objections to the admission of the evidence are more appropriately addressed at trial. Because the Court sits as the trier of fact, "the district court is able to 'make its reliability determination during, rather than in advance of, trial." Flores, 901 F.3d at 1165; see also Wallis v. Greyhound Lines, 2021 WL 4706975 (C.D. Cal. May 19, 2021) ("Because this is a bench trial, the danger of prejudice is low."); United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009) ("Because the judge rules on the evidentiary motion[s], in the case of a bench trial, a threshold ruling is generally superfluous.").

Accordingly, the Court **RESERVES JUDGMENT** on the government's second motion *in limine* to admit the direct evidence; inextricably intertwined evidence; and evidence of defendant's other acts.

## V. CONCLUSION

In accordance with the foregoing, the Court **RESERVES JUDGMENT** on defendant's motion *in limine* to exclude expert testimony and **DENIES** defendant's request for a *Daubert* Hearing.

The Court **RESERVES JUDGMENT** on the government's motion *in limine* No. 1 and motion *in limine* No. 2. The Court **ORDERS** the Superior Court of California, Los Angeles County to unseal state search warrant No. 66956 for disclosure to the parties in this case.

IT IS SO ORDERED.

| | 00 | : | 45 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |